**ORAL ARGUMENT SET FOR APRIL 4, 2025**

Appeal No. 24-5125

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

KATHERINE J. MERA,

Plaintiff-Appellant,

v.

PAMELA BONDI,
United States Attorney General,

Defendant-Appellee.

_____

On Appeal from the United States District Court
For The District of Columbia
Civil Action1:20-cv-02127-BAH
HONORABLE  BERYL A. HOWELL
UNITED STATES DISTRICT JUDGE

_____

**REPLY BRIEF FOR APPELLANT**
_____

Richard L. Swick
SWICK & SHAPIRO, P.C.
1432 K Street, N.W.
12th Floor
Washington, DC 20005
(202) 842-0300
Email: rlswick@swickandshapiro.com
Counsel for Appellant

# TABLE OF CONTENTS

Reply Brief for Appellant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  The 2024 *Muldrow* Precedent Reconfirms that Adverse  Actions
    Like Mera Endured are sufficient to Support
    Her Retaliation Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  There are More Than 18 Issues of Objective Facts, not Opinions,
     regarding Adverse Actions Against Mera. . . . . . . . . . . . . . . . . . . . . . 4

III. Mera's Evidence is Material, Relevant and Shows Genuine
     Disputed Issues of Objective Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     A.  Repeated cites to *Hairston* do not support dismissing
         all of Mera's evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     B.  *Jones v. Bernanke* calls for crediting Mera's evidence that
         disputes appellee's factual assertions. . . . . . . . . . . . . . . . . . . . . 11

     C.  Mera's undisputed career shows her professional opinions are
         competent and relevant evidence – and it sharply focuses
         the sudden retaliatory change in supervisors' "opinions." . . . . . . 13

IV.  It is a Jury Function to Resolve the Multiple Issues of
     Material Facts Raised by the Record Evidence. . . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

# Table of Authorities

<u>Cases:</u>

*Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013)  . . . . . . . . . .  4

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. at 57, 68 (2006) . . . . .  4,7

*George v. Leavitt*, 407 F.3d 405, 413 (2005) . . . . . . . . . . . . . . . . . . . . .  12,16

*Hairston v. Vance-Cooks*, 773 F.3d 266, 273 (D.C. Cir. 2014)  . . . . . . .  9-10

*Hinds v. Sprint/United Management Co.*,
    523 F.3d 1187, 1204-05 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . .  2

*Jones v. Bernanke*, 557 F.3d 670 (D.C. Cir. 2009) . . . . . . . . . . . . . . . .  11.12.16

*Keith v. United States Gov't Accountability Office*, No. 21-2010 (RC),
    2022 U.S. Dist. LEXIS 154586 (D.D.C. Aug. 29, 2022)  . . . . . . . .  3

*McCullough v. Real Foods*, 140 F.3d 1123, 1129 (8th Cir. 1998) . . . . .  11

*Morris v. McCarthy*, 825 F.3d 658, 671 (D.C. Cir. 2016) . . . . . . . . . . .  11

*Muldrow v. City of St. Louis,* 601 U.S. 346, 355 (2024) . . . . . . . . . . . . .  1-2

*Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) . . . . . .  2

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000) . . . . . . . . .  11

*Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006), . . . . . . . . .  7

*Semsroth v. City of Wichita*,
    548 F. Supp. 2d 1203, 1211-12 (D. Kan. 2008) . . . . . . . . . . . . . .  2

*Sylvester v. SOS Children's Villages Illinois, Inc.*,
    453 F.3d 900, 903 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Troupe v. May Dep't Stores Co.*, 20 F.3d 734 (7th Cir. 1994) . . . . . . . .  3

*Vega v. Hempstead Union Free Sch. Dist.*,
 801 F.3d 72, 87 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Washington v. Ill. Dep't of Revenue*, 420 F.3d 658 (7th Cir. 2005) . . . .  7

## REPLY BRIEF FOR APPELLANT

* * * * *

### Summary of Argument

Appellee defends Mera's claims of discrimination or retaliation by dis-aggregating her case into small elements and then attempting to rebut them. However, that strategy must fail here because Appellant Mera's case must necessarily be viewed as a whole, with Mera's evidence credited and her reasonable inferences accepted. Here, based on Mera's evidence, a jury could infer retaliation from the series of adverse actions against Mera that would dissuade any reasonable employee from pursuing EEO remedies. Appellant therefore urges that the decision of the District Court be reversed and that her case be remanded for trial.

## I.     The 2024 *Muldrow* Precedent Reconfirms That Adverse Actions Like Mera Endured Are Sufficient to Support Her Retaliation Claims.

In 2024, the Supreme Court clarified that in Title VII EEO cases, the degree of "harm" caused by an adverse employment action need not reach an arbitrary threshold such as "significant," or "serious," or substantial, or any "similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Indeed, the *Muldrow* Court continued:

And there is nothing to otherwise establish an elevated threshold of harm. To demand "significance" is to add words—and significant than the law as written.

*Id.*

Mera's situation presents evidence showing a pattern of adverse treatment personnel actions over a period of months, which demonstrates the Appellee employer's retaliatory animus even though there is a longer period between the employee's initial protected activity and the agency's adverse action. *See Semsroth v. City of Wichita*, 548 F. Supp. 2d 1203, 1211-12 (D. Kan. 2008) (analyzing such situation), *citing inter alia, Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1204-05 (10th Cir. 2008) (pattern of retaliatory conduct may provide temporal proximity sufficient to preclude summary judgment). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded[.]" *Ortiz v. Werner Enters., Inc*., 834 F.3d 760, 765 (7th Cir. 2016) (Easterbrook, J., with Posner, J. also on the unanimous panel). Following *Muldrow*, the employer's adverse actions against Mera cannot words, as it were—to the statute Congress enacted. It is to impose a new requirement on a Title VII claimant, so that the law as applied demands something

2

more of [plaintiff] be dismissed as "insignificant."

Several forms of evidence that can support employment discrimination and retaliation cases, and much or all of it may be circumstantial. Such evidence can "consist of ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Sylvester v. SOS Children's Villages Illinois, Inc*., 453 F.3d 900, 903 (7th Cir. 2006) (Posner, J.), *quoting and refining Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994) (Posner, J.).

A plaintiff like Mera can show "discriminatory treatment by 'creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination.'" *Keith v. United States Gov't Accountability Office*, Civ. No. 21-2010 (RC), 2022 U.S. Dist. LEXIS 154586, at *8 n.4 (D.D.C. Aug. 29, 2022), *citing Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 87 (2d Cir. 2015) (citation omitted and cleaned up). Collecting a series of adverse actions pointing to retaliation follows the same principle, except that a retaliatory "adverse action" is simply one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57, 68 (2006). "[N]ot all

3

actionable harms are obvious, and a plaintiff alleging retaliation *may rely on more subtle actions* to make his case." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (emphasis added).

## II.     There are More Than 18 Issues of Objective Facts, not Opinions, regarding Adverse Actions Against Mera.

Appellant Mera's opening brief (pp. 5-32) identifies the series of retaliatory adverse actions, including:

• Despite the *first negotiated settlement* and telework accommodation for Mera's disability, Supervisor Johnson pressures Mera to work at the office.

• Johnson repeatedly demands additional proof of Mera's need for accommodation.

• Johnson directs Mera to attend an in-person orientation contrary to accommodation.

• Johnson fails to respond to Mera's query about attending another in-person meeting, leaving the impression that Mera simply refused when she did not.

• Johnson inserts additional PTSD-triggering demands on Mera that exceed the *second negotiated settlement* of Mera's EEO requests for accommodation.

4

• Second-level Supervisor Neufville refuses Mera a transfer to another supervisor in February 2019.

• Mera is orally (and falsely) accused of not working proper hours in April 2019.

• Johnson's fails to respond to Mera's October 2018 request to end the micro-management of her work by Team Lead Latinisha Lewis.

• Management prevents Mera from obtaining a temporary detail to a Grant Program Specialist job in the Tribal Unit of the Office on Violence Against Women (OVW).

• Johnson unduly criticizes Mera's work during a Skype meeting in front of others, although Johnson and previous supervisors had evaluated Mera's similar work as "successful."

• Management answers Mera's request to discuss a transfer to another unit by *falsely stating* that no positions were available.

• Neufville *falsely accuses* Mera of not participating in a Division meeting via telephone (an allegation never retracted even when Mera demonstrated that it was untrue).

• Johnson *curses* at Mera in a Unit meeting, singling her out for verbal criticism, directing profanity toward her, and generally attempting to bully

5

her, all in front of colleagues (although witnessed by the entire Unit Staff, no action was taken to redress Johnson's outrageous conduct).

• Johnson *falsely accuses* Mera of failing to work her scheduled hours on April 4, 2019 (an accusation never retracted even after proved false).

• Johnson *violated* the Collective Bargaining Agreement by delivering Mera's 2017-2018 evaluation in mid-2019, many months late after the deadline.

• Johnson's 2017-2018 evaluation rates Mera "unacceptable" on every critical element – a surprise and shock to Mera, given she had no advance warning and all her prior evaluations, including the previous one from Johnson, were "successful" or "excellent" and included favorable comments.

• Johnson places Mera on a Performance Improvement Plan (PIP) because of the surprising and disputed "unacceptable" evaluation.

• The PIP includes termination provisions that mostly depend upon the supervisor's subjective evaluation of whether Mera failed the requirement.[1]

---

[1] *See* PIP, JA000554 (indicating any of the following "will constitute a failure of this task": "Elevating routine inquiries to co-workers or supervisor more than 2 times during the duration of this PIP, without first attempting to research and formulate technically correct responses;" (p. 5); "Failure to respond to at least one inquiry about your section of the agenda during the Project Coordinators Call in

6

• Johnson formally proposes Mera's removal on November 21, 2019, for

Mera's allegedly failing the PIP – no consideration of any option, such as

demotion, appears in the proposal.

• The decision-maker, Ms. Powers, imposes the removal on March 25, 2020,

without considering any alternative such as demotion.

Most or all of these adverse actions "could well dissuade a reasonable

worker from making or supporting a charge of discrimination." *Burlington N. &*

*Santa Fe Ry. v. White*, 548 U.S. at 57, 68, *adopting the rule stated in Rochon v.*

*Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006), *and in Washington v. Ill. Dep't*

*of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) (Easterbrook, J.). Undoubtedly the

connected sequence of adverse actions taken together would dissuade nearly

anyone from engaging in protected EEO activity.

Mera had worked for years doing the same or similar work and receiving

"successful" or better evaluations and some as well. Having suffered grievous

injuries in the military and thus granted an accommodation, Mera worked from

---

September" (p. 5); "Any one Redbook that contains more than three errors" (p. 7);
"Failure to respond to two or more inquiries regarding your Redbooks within 2
business days" (p. 7); "Failure to actively engage in discussions with unit
members, and/or offer solutions to the unit's program plan" (p. 8); "More than
three substantive errors... during the performance period on your assigned GMMs"
(p. 10); "Additionally, if the analysis is returned with more than 3 errors per
budget from the Grants Financial Management Division" (p. 10).

home most of the time, and delivered her work product well for those years. Then suddenly everything changed. Appellant's Brief documents the sequence.

## III. Mera's Evidence is Material, Relevant and Shows Genuine Disputed Issues of Objective Facts.

The District Court's chief error leading to this appeal stems from that court's faulting Mera's opposition to summary judgment for "outlining, in excruciating detail, all of her disagreements with the [d]ecision" to fire her and contending: "[I]t is axiomatic that a plaintiff cannot establish pretext simply based on her own subjective assessment of her own performance." (Citation omitted) Mem. Op. at 35, JA000964.

### A. Repeated cites to *Hairston* do not support dismissing all of Mera's evidence.

Appellee's Brief naturally capitalizes on this error, and indeed itself outlines "in excruciating detail" all of Appellee's criticisms of Mera's performance. Appellee dismisses practically everything Mera offers to explain or clarify events as irrelevant or immaterial. *See, e.g.*, Appellee's Brief, pp. 38, 40, 53, 54, 55, 56 (deeming "immaterial" everything Mera offers to dispute the material facts). Appellee repeatedly asserts "the presumptive validity of [supervisors' and decision-makers'] explanations." *E.g.*, App. Br. at 29, 32, 38.

8

Appellee says its managers' explanations trump Mera's different, explanatory or opposite evidence and explanations. In support, Appellee repeatedly cites *Hairston v. Vance-Cooks*, 773 F.3d 266, 273 (D.C. Cir. 2014), as holding  " 'the key question' when it comes to pretext 'is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers.' " Appellee urges that whatever the employer says that he or she "honestly believes," must be taken as conclusive. Appellee therefore contends Mera cannot offer any evidence to question what Johnson or Powers "honestly believed."  If either supervisor or decision-maker provides a "belief," that settles the matter.

Appellee is wrong about *Hairston* and wrong on the law. First, the cited passage in *Hairston* does not say that everything an employer claims to believe must conclude the matters in employer's favor. To the contrary, *Hairston* expressly observes first that the plaintiff could well provide evidence "that *calls into question the genuineness of [decision-maker's] belief* that [plaintiff] was not qualified for the job he was seeking." *Id.* at 273 (emphasis added).  The *Hairston* precedent thus *would credit* a plaintiff's testimony that undermines an employer's claimed "belief."

9

Second, *Hairston* expressly *credited external evidence* that supported the decision-maker's "belief."  That evidence included testimony from another supervisor who had supervised the plaintiff directly "on the floor" and had personal knowledge of the plaintiff's performance and reputation among coworkers, including coworker statements about the plaintiff's having neither "the knowledge nor experience to run" the key workplace equipment. *Id.* at 273. *Hairston* thus did not simply give *carte blanche* to whatever the decision-maker claimed to "believe" – contrary to Appellee's position here. *Hairston* called for external corroborating evidence.

Finally, Appellee's quotation from *Hairston* applied to a big-picture decision about an applicant's qualifications for a new job. It was not about a decision to terminate a career. Given all the information the *Hairston* decision-maker had, the court held his big-picture decision rested upon evidentially supportable belief and was not pretextual. *Hairston* nowhere held that everything the decision-maker believed had to be accepted as true and the employee could not controvert beliefs at all.[2]

---

[2] "While federal courts do not 'sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers,' [] when the whole of the evidence raises a reasonable inference that 'those business judgments involve intentional discrimination,' *the law permits the person who claims to have been discriminated against to have her day in court.* [] Such is the case here."

10

Appellee's Brief (p. 36) presents this point, however: "Mera 'cannot survive summary judgment merely by asserting that [Powers] made a bad decision. Rather, she must raise a genuine dispute over [Powers'] honest belief in [Powers'] proffered explanation'" (citing *Morris v. McCarthy*, 825 F.3d 658, 671 (D.C. Cir. 2016). Indeed, Mera "can meet this burden by casting doubt on *the objective validity* of the employer's explanation." *Morris*,  825 F.3d at 671 (emphasis added), *citing Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 143-146 (2000). A statement has the needed objective validity when supported by evidence outside of the mind of the believer.[3]

### B.  *Jones v. Bernanke* calls for crediting Mera's evidence that disputes appellee's factual assertions.

This Court's analysis and holding in *Jones v. Bernanke*, 557 F.3d 670 (D.C. Cir. 2009), describes how the plaintiff employee's challenges to the employer's asserted facts underlying its employment must be considered, not discarded as "immaterial." In *Jones*, the plaintiff:

---

*McCullough v. Real Foods*, 140 F.3d 1123, 1129 (8th Cir. 1998) (emphasis added; internal citations omitted).

[3] "Objective Evidence" is that which "is not subject to bias and is quantifiable and able to be indepedently confirmed and verified by using analytical or other tools." https://dictionary.thelaw.com/objective-evidence/

offered evidence discrediting the Board's legitimate explanation for
the 2000 evaluation – evidence that alone provides an adequate basis
from which a reasonable jury might infer retaliation. Specifically, in
response to the Board's claim that Jones's 2000 "commendable"
rating reflected an honest assessment of his performance and his
failure to complete two projects in particular, Jones offered evidence
that he was never assigned one of the projects and was removed from
the other. As we have said, such evidence "usually" is itself sufficient
to allow a reasonable jury to infer retaliation.

*Id.* at 680-81, *citing George v. Leavitt*, 407 F.3d 405, 413 (2005); *see id.* at 414

("While there is no doubt that the record contains evidence to support [agency's]

claim that [employee] had 'conduct and performance deficiencies,' this evidence is

not undisputed").

The *Jones* court continued: "Although a jury may ultimately choose to

believe the Board's explanation of events rather than Jones's, at this stage we

refrain from making credibility determinations, weighing the evidence, or drawing

inferences from the evidence – these, after all, are 'jury functions, not those of a

judge ruling on a motion for summary judgment.' [] It's enough for us to conclude,

as the district court originally did, that this evidence would allow a reasonable jury

to believe Jones's version of events." *Jones*, 557 F.3d at 681, *quoting George*, 407

F.3d at 414.

Here, the District Court erred in granting summary judgment because there

are multiple issues of material fact, which, if resolved in Mera's favor, could lead

12

a jury to reasonably find she was terminated because of her protected activity. The District Court faults Mera for "outlining, in excruciating detail, all of her disagreements with the [d]ecision" to fire her and states that "[I]t is axiomatic that a plaintiff cannot establish pretext simply based on her own subjective assessment of her own performance." (Citation omitted) Mem.Op. at 35, JA000964.

Mera's responses to the allegations upon which the termination decision is not based are not mere personal opinions, however. No – she *contested the factual allegations* upon which her termination is based. Johnson's allegations of facts are either true or not true. Because Mera relies on evidence that Johnson has not been truthful, complete and forthright in the allegations that brought about her termination, there is a dispute of material facts that requires a jury's finding and decision.

### C.  Mera's undisputed career shows her professional opinions are competent and relevant evidence – and it sharply focuses the sudden retaliatory change in supervisors' "opinions."

Appellee's Brief frequently asserts certain things that Mera "should have known" as "an experienced GS-13." App. Br., pp. 12, 13, 18, 19, 27, 43, 45, 46, 53. Appellee cannot dispute Mera's performance reviews over many years confirmed that Mera is an experienced GS-13 and does know her job. *See* Pl. Ex. 11 at 18, JA_; App. Br., p. 9 ("Johnson wrote that '[a]s a veteran GS-13 program

13

specialist in [the Office] for more than 10 years, more than 5 of those spent

working in the Campus Program specifically'"; App. Br., p. 22 ("Powers stressed

Mera's "more than 16 years of experience,'"; App. Br., p. 45 ("Powers wrote,

Mera had 'almost 20 years of experience' in drafting Redbooks"); Joint Appx.

Exh. 6 (2008, "Outstanding" rating), Exh. 7 (2010, "Excellent" rating), Exh. 8

(2011, "Excellent" rating), Exh. 9 (2012, "Excellent rating"), Exh. 10 (2013,

"Successful" rating), Exh. 11 (2016, "Successful" rating).

    The above citations to Appellee's formal performance evaluations show that

Mera was doing her job – this same job – at "successful" or "excellent"  and was

not being placed on PIPs or being otherwise wholesale criticized for many years.

Mera was competent and knew how to do the job to the supervisors' satisfaction,

year after year. That fact qualifies Mera as a professional, so that her "opinion"

about what performance is adequate not like a personal subjective choice between

monochrome and color M&M candies – her opinions have the same bases in fact

and experience as would Johnson's opinions about the work product in question.

    If Johnson rated Mera as "successful" for her work product in one year, but

downgraded Mera to "unsuccessful" the following year – based upon the same

work product performance – then there arises the question of fact: Why did

Johnson suddenly downgrade Mera?  And why did Johnson suddenly downgrade

her just after Mera participated in protected EEO activity and obtained settlements twice? Mera's evaluation of her work product is competent and relevant evidence to evaluate Johnson's stated reasons for steep downgrade.

## IV.    It is a Jury Function to Resolve the Multiple Issues of Material Facts Raised by the Record Evidence.

Appellee's Brief aims to prevent a jury from considering Mera's case by having her evidence disregarded and the big picture ignored. The record evidence at trial would support finding by the jury that:

•    Mera was doing fine at work in her career at this agency, when most of the time she worked at home. She was rated "outstanding," "successful," and "excellent" evaluations at this agency. If sometimes her work product needed corrections or revisions, her supervisors interacted with her and they got the job done as colleagues. This went on for years.

•    When Mera faced some pushback about her telework accommodation, however, Mera used the standard EEO procedures to try to preserve her reasonable telework accommodation. Mera did obtain the accommodations in official settlements, which annoyed, angered, and embarrassed the supervisors who had resisted continuing the accommodations.

•    Her supervisors immediately started to pressure Mera and build a case

15

against her. They took a series of adverse actions against Mera as discussed above.

•     Then, her supervisors suddenly declared her performance at every level was "unacceptable." They put Mera on a PIP with sudden-death provisions, and rather predictably claimed she "failed" in most of them.

•     The result was they fired her after over 16 years of steady performance and consistent promotions. There is every reason to believe that the supervisors turned hostile and downgraded Mera because she had pressed for her legal rights to accommodation to help her do her job.

The facts of Mera's case make a convincing case of retaliation. It was error to throw out Mera's evidence at summary judgment and rule against her because of the employer's opinions. Appellee can make its case to a jury, and maybe prevail. Just as this Court has declared: "Although a jury may ultimately choose to believe the [employer's] explanation of events rather than [plaintiff's], at this stage we refrain from making credibility determinations, weighing the evidence, or drawing inferences from the evidence – these, after all, are 'jury functions, not those of a judge ruling on a motion for summary judgment.'" *Jones*, 557 F.3d at 681, *quoting and citing George*, 407 F.3d at 413.

Mera's case involves so many employer adverse actions that all began right after Mera prevailed in her EEO actions. Her case truly deserves a hearing and

16

decision by a jury.

## CONCLUSION

For the reasons stated, the District Court's decision should be reversed and this case should be remanded for trial.

Respectfully Submitted,

/s/Richard L.Swick
Richard L. Swick
SWICK & SHAPIRO, P.C.
1432 K Street, N.W.,12th Floor
Washington, DC 20005
(202) 812-7000
rlswick@swickandshapiro.com

Attorney for Appellant

17

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

(Type-Volume Limit, Typeface Requirements, and Type-Style Requirements)

1.  This brief complies with the type-volume limit of Fed. R. App. P.

    32(a)(7)(B)) because, excluding the parts of the document  exempted by

    Fed. R. App. P. 32(f), this brief contains 3,411 words.

2.  This brief complies with the typeface requirements of Fed. R. App. P.

    32(a)(5) and the type-style requirements of Fed. R. App.  P. 32(a)(6)

    because: this brief  has been prepared in a proportionally spaced typeface

    using Corel WordPerfect in Times New Roman 14 point.

                            Respectfully submitted,

                             /s/ Richard L. Swick
                            Richard L. Swick
                            Attorney for Appellant